FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 28, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEANNE S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 4:17-CV-05144-SMJ <br><br> **ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Before the Court, without oral argument, are the parties' cross-motions for summary judgment, ECF Nos. 11 & 19. Plaintiff appeals the Administrative Law Judge's ("ALJ") denial of Supplemental Security Income. ECF No. 3. Plaintiff contends the ALJ erred by (1) improperly rejecting the opinions of Plaintiff's medical sources, (2) improperly assessing the credibility of Plaintiff's subjective complaints, and (3) finding Plaintiff can adjust to other work. The Commissioner of the Social Security Administration asks the Court to affirm the ALJ's decision.

After reviewing the record and relevant authority, the Court is fully informed. For the reasons set forth below, the Court reverses and remands the ALJ's decision, and therefore grants Plaintiff's motion and denies the Commissioner's motion.

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 1

# I. BACKGROUND[1]

Plaintiff filed an application for Supplemental Security Income on December 11, 2013, alleging disability beginning on December 2, 2008. AR[2] 20. The alleged disability onset date was later amended to December 11, 2013. AR 22. The claim was denied initially and upon reconsideration, and Plaintiff requested a hearing. AR 20. A video hearing occurred on November 8, 2016. AR 20. Plaintiff appeared in Kennewick, Washington and ALJ M.J. Adams presided over the hearing from Seattle, Washington. AR 20. The ALJ issued an unfavorable decision. AR 17–37. Plaintiff filed a request for review, which the Appeals Council denied. AR 1.

# II. ALJ FINDINGS[3]

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since the alleged disability onset date of December 11, 2013. AR 22. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease, bipolar disorder, anxiety related disorder, and

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, and the parties' briefs.

[2] For ease and consistency with the parties' briefs, the Court cites to the consecutive pagination of the administrative record, which appears in ECF Nos. 8 through 8-8.

[3] The applicable five-step disability determination process is set forth in the ALJ's decision, AR 21–22, and the Court presumes the parties are well acquainted with that standard. Accordingly, the Court does not restate the five-step process in this Order.

personality disorder. AR 22. At step three, the ALJ found Plaintiff's impairments do not meet or medically equal the severity of a listed impairment. AR 24. At step four, the ALJ found Plaintiff has the residual functional capacity to perform light work with certain limitations. AR 27. Further, at step four, the ALJ found Plaintiff has no past relevant work. AR 36. Finally, at step five, the ALJ found jobs exist in significant numbers in the national economy that Plaintiff can perform despite her age, education, work experience, and residual functional capacity. AR 36. Accordingly, the ALJ determined Plaintiff is not disabled as defined in the Social Security Act. AR 37.

### III. STANDARD OF REVIEW

The Court must uphold an ALJ's determination that a claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (citing *Stone v. Heckler*, 761 F.2d 530, 531 (9th Cir. 1985)). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). This must be more than a mere scintilla, but may be less than a preponderance. *Id.* at 1110–11. Even where the evidence supports more than one rational interpretation, the Court must uphold an ALJ's decision if it is supported by inferences reasonably drawn from

the record. *Id.*; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

Yet, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)).

## IV. ANALYSIS

### A. The ALJ erred by failing to give specific and legitimate reasons, supported by substantial evidence, for rejecting the opinions of Plaintiff's medical sources.

Plaintiff argues the ALJ improperly rejected the opinions of a treating nurse, a clinical psychologist, a treating physician, and an examining physician. "To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (alteration in original) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Ryan*, 528 F.3d at 1198).

An ALJ must also consider opinions from other medical providers, such as

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT - 4

nurse practitioners, who are not considered "acceptable medical sources." *Id.* at 655; *see id.* at 665. "Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina*, 674 F.3d at 1114. An ALJ may not disregard such evidence without comment and may discount it only by giving "reasons germane to each witness." *Id.*; *accord Revels*, 874 F.3d at 655.

### 1. Treating nurse Christina M. Chacon, FPMHNP-BC

On November 4, 2016, Nurse Chacon conducted a mental assessment of Plaintiff, opining she had marked limitations (defined as "[v]ery significant interference with basic work-related activities, i.e., unable to perform the described mental activity for more than 33% of the work day") in the following categories: "[t]he ability to remember locations and work-like procedures," "[t]he ability to understand and remember detailed instructions," "[t]he ability to carry out detailed instructions," "[t]he ability to maintain attention and concentration for extended periods," "[t]he ability to complete normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," "[t]he ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "[t]he ability to respond appropriately to changes in the work setting." AR 1004–05.

Nurse Chacon also opined Plaintiff had marked "[d]ifficulties in maintaining concentration, persistence or pace"; would likely be off-task over 30% of the time in a forty-hour workweek; and would likely miss four or more days of work per month. AR 1006.

Plaintiff argues the ALJ erred by failing to address or even acknowledge Nurse Chacon's opinion. ECF No. 11 at 13–14. The Court agrees. "The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it." *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017). Failing to consider Nurse Chacon's opinion left a record with unresolved conflicts and ambiguities, and devoid of any reason, germane to that witness, for rejecting her opinion. The Court cannot conclude this error was harmless because a reasonable ALJ, after fully crediting Nurse Chacon's opinion on Plaintiff's symptoms and how her impairments affect her ability to work, could determine Plaintiff is disabled. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). This error requires remand for the ALJ to weigh the evidence in the first instance. *See id.*

**2.  Clinical psychologist Tae-Im Moon, PhD**

In September 2013, Dr. Moon assessed Plaintiff a Global Assessment of Functioning ("GAF") score of 50. AR 405. In both September 2013 and August 2015, Dr. Moon observed Plaintiff had "very significant limitation[s]" in communicating and performing effectively in a work setting, completing a normal

work day or week without interruption from psychological symptoms, and maintaining appropriate behavior in a work setting. AR 405–06, 748. In each meeting, Dr. Moon conducted a mental status examination of Plaintiff and made similar observations. AR 406–07, 749–50. But in August 2015, Dr. Moon rated Plaintiff below normal limits in thought process and content, concentration, and insight and judgment, while rating her within normal limits for those categories in September 2013. AR 406–07, 749–50.

Plaintiff argues the ALJ erred by failing to consider these portions of Dr. Moon's opinion and instead focusing solely on one numeric score—the GAF level of 50. ECF No. 11 at 14–15. The Court agrees. Regardless of its source, every opinion received from a licensed psychologist must be evaluated. *See* 20 C.F.R. §§ 404.1527(c), .1502(a). Failing to consider the entire substance of Dr. Moon's opinion left a record with unresolved conflicts and ambiguities, and devoid of any reason, let alone a specific and legitimate reason supported by substantial evidence, for rejecting her opinion. The Court cannot conclude this error was harmless because a reasonable ALJ, after fully crediting Dr. Moon's opinion on Plaintiff's marked occupational limitations, could determine Plaintiff is disabled. *See Marsh*, 792 F.3d at 1173. This error requires remand for the ALJ to weigh the evidence in the first instance. *See id.*

Having already decided remand is necessary, the Court instructs the ALJ to

reevaluate Dr. Moon's assessed GAF score in light of the entire record. A GAF score of 50 indicates Plaintiff suffers from serious symptoms or serious impairment in occupational or other functioning. *See Morgan*, 169 F.3d at 598 n.1. But the ALJ rejected this GAF score for reasons that do not withstand review.[4]

Ultimately, the ALJ rejected Dr. Moon's assessed GAF score because he found (1) "Dr. Moon's opinion is not consistent with the documented appearance and abilities of the claimant during the mental status examination," AR 34 (citing AR 407), and (2) "new evidence . . . further show[s] that the claimant is less limited than determined by . . . Dr. Moon," AR 35. The ALJ erred by "improperly cherry-pick[ing]" from the record while ignoring the majority of Dr. Moon's opinion and the entirety of Nurse Chacon's opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see also Garrison*, 759 F.3d at 1018 n.23 ("The ALJ was not permitted to 'cherry-pick' from [some] mixed results to support a denial of benefits. . . . The very nature of bipolar disorder is that people with the disease

---

[4] Initially, the ALJ rejected this GAF score because it predates Plaintiff's alleged disability onset date. AR 34. The Court has previously concluded "an ALJ may not reject medical evidence solely because it predates the alleged date of the onset of disability." *Tabitha J. v. Comm'r of Soc. Sec.*, No. 4:17-cv-05111-SMJ, slip op. at 11 (E.D. Wash. July 10, 2018) (ECF No. 21). "[W]here, as here, the medical opinion evidence is from shortly before the period of alleged disability, the ALJ must provide a basis for rejecting the opinion." *Id.* Therefore, to withstand review, the ALJ's other reasons for rejecting this GAF score must be specific and legitimate, and supported by substantial evidence.

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 8

experience fluctuations in their symptoms . . . ." (first omission in original) (quoting *Scott v. Astrue*, 647 F.3d 734, 739–40 (7th Cir. 2011))).

Lastly, the ALJ appears to have rejected Dr. Moon's assessed GAF score based in part on policy concerns. *See* AR 34–35. That is not a specific and legitimate reason supported by substantial evidence. Where, as here, a GAF score comes from an acceptable medical source, it is medical opinion evidence the ALJ should consider. *See Wellington v. Berryhill*, 878 F.3d 867, 871 n.1 (9th Cir. 2017).

### 3. Treating physician James E. Leedy, MD

Dr. Leedy conducted a physical function evaluation of Plaintiff in August 2015. AR 754–56. Dr. Leedy opined Plaintiff was severely limited in the basic work activities of sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, crouching, and communicating. AR 755. He specified these limitations derived from her degenerative disc disease and herniated nucleus pulposus pain from a motor vehicle accident, as well as her bipolar disorder and anxiety disorder. AR 755. As a result of these severe limitations, Dr. Leedy opined Plaintiff was "[u]nable to meet the demand of sedentary work." AR 756.

Plaintiff argues the ALJ erred by failing to consider Dr. Leedy's August 2015 opinion. ECF No. 11 at 15. The Court agrees. Regardless of its source, every opinion received from a licensed physician must be evaluated. *See* 20 C.F.R.

§§ 404.1527(c), .1502(a).

The Commissioner argues this was not error, or this error was harmless, because it is reasonable to infer the ALJ would have rejected Dr. Leedy's August 2015 opinion for the same reasons he rejected Dr. Leedy's October 2013 opinion. ECF No. 19 at 13. The Court disagrees. In October 2013, Dr. Leedy diagnosed Plaintiff with only back pain and fibromyalgia. AR 410. He observed she had marked limitations, not severe ones. AR 410. Dr. Leedy gave no explanation for this opinion, which he made early in his treating relationship with Plaintiff and before her alleged disability onset date. AR 33, 410. None of these factors apply to Dr. Leedy's August 2015 opinion. Whether the latter opinion contradicts other evidence is for the ALJ to decide in the first instance. The Court notes, however, that Plaintiff's condition appears to have fluctuated. The ALJ must consider the whole record and may not simply cherry-pick the good moments while ignoring the bad. *See Ghanim*, 763 F.3d at 1164; *Garrison*, 759 F.3d at 1018 n.23.

Thus, the Court concludes the ALJ's failure to consider Dr. Leedy's August 2015 opinion left a record with unresolved conflicts and ambiguities, and devoid of any reason, let alone a specific and legitimate reason supported by substantial evidence, for rejecting his opinion. The Court cannot conclude this error was harmless because a reasonable ALJ, after fully crediting Dr. Leedy's August 2015 opinion on Plaintiff's severe occupational limitations, could determine Plaintiff is

disabled. *See Marsh*, 792 F.3d at 1173. This error requires remand for the ALJ to weigh the evidence in the first instance. *See id.*

### 4. Examining physician William R. Drenguis, MD

Dr. Drenguis completed a physical evaluation of Plaintiff in April 2014. AR 432–36. He opined in part that she is limited to sitting, standing, or walking only four hours in an eight-hour workday and must alternate positions every thirty to forty-five minutes. AR 435. The ALJ gave little weight to this portion of Dr. Drenguis's opinion, partly because of Dr. Leedy's September and October 2014 opinions that Plaintiff had become fully functional as her ability had improved with narcotics. AR 33. But as noted above, the ALJ overlooked Dr. Leedy's August 2015 opinion, which suggested her condition subsequently deteriorated to a severe state. AR 755–56. In August 2015, Dr. Leedy found Plaintiff had low range of motion and could not sit or stand for long periods of time. AR 755.

Having already decided remand is necessary, the Court instructs the ALJ to reevaluate Dr. Drenguis's opinion in light of the entire record.

**B. The ALJ erred by failing to give specific, clear and convincing reasons for rejecting Plaintiff's complaints about the severity of her constipation.**

Plaintiff argues the ALJ improperly assessed the credibility of her subjective complaints. ECF No. 11 at 17–18. Where, as here, a claimant presents objective medical evidence of an underlying impairment that could reasonably be

expected to produce the symptoms alleged, and there is no evidence of malingering, "the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms.'" *Diedrich*, 874 F.3d at 641 (quoting *Molina*, 674 F.3d at 1112). A finding that a claimant's testimony is not credible must be sufficiently specific to allow the Court to conclude the ALJ rejected it on permissible grounds and did not discredit it arbitrarily. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

On September 20, 2013, Dr. Leedy prescribed Plaintiff MiraLax because she was "having a little diverse effects in that of constipation." AR 449–50, 494. As of April 28, 2014, MiraLax was "work[ing] well" in relieving Plaintiff's constipation—the only adverse side effect of her narcotic medication at the time. AR 473. As of June 11, 2014, Plaintiff was still taking medication for constipation. AR 439.

Plaintiff's subsequent medical records show she was "[n]egative for . . . constipation" on July 18, 2014, September 16, 2014, February 3, 2015, July 30, 2015, July 31, 2015, and November 5, 2015. AR 479, 483, 519, 521, 523, 529,

532, 772, 775, 796, 816, 957.

But then, on September 9, 2016, Benjamin Nettleton, DO, diagnosed Plaintiff with "[c]hronic constipation," prescribed her docusate sodium, and referred her to a gastroenterologist. AR 985–86. Plaintiff reported she was "having pain in [her] abdomen with swelling." AR 984. Dr. Nettleton recorded this problem was "chronic" and included "constipation problems such as a small child." AR 984. He noted she was "polyglycolic but ha[d] to partially disimpact herself frequently." AR 984. Plaintiff had "noticed some lumps near her anus" and "[o]ccasionally ha[d] drops of blood from her stool." AR 984. Dr. Nettleton noted "[s]ymptoms worsened after a reconstruction after a complication from a [prior] procedure." AR 984. Plaintiff's medical history was "significant for irritable bowel syndrome[ and] recon[s]tructive surgery on her abdomen." AR 984.

On September 27, 2016, Plaintiff followed up with Nurse Chacon, reporting she was "having ongoing medical issues related to pain[ and] constipation." AR 988. And on September 29, 2016, Linda L. Walby, MD, noted no change but that Plaintiff had an appointment with a gastrointestinal clinician. AR 998–99, 1001.

At the hearing on November 8, 2016, Plaintiff testified she has experienced constipation following her 2012 hysterectomy. AR 74, 82–85. Plaintiff described this as feeling the need to have a bowel movement but being unable to do so naturally. AR 83. When this happens, Plaintiff said she experiences spasms and

sometimes sweating and nausea. AR 74, 83–85. Plaintiff testified her physician instructed her on how to assist herself in producing a bowel movement. AR 83–84. Plaintiff said she sits on the toilet with her feet on a step stool and her knees elevated, leans to her left, and, with gloves, digitally stimulates her rectal muscles because they will not work on their own. AR 83–85. Plaintiff testified this process takes about an hour and a half, and she must repeat this process about two to three times per week. AR 84–85. Plaintiff said this is not something she can schedule but, rather, something that happens in its own time. AR 84–85.

Plaintiff argues the ALJ did not give specific, clear and convincing reasons for rejecting her complaints about the severity of her constipation. ECF No. 11 at 18. The Court agrees. While the ALJ devoted seven single-spaced pages to analyzing many of Plaintiff's complaints, he did not address her constipation. *See* AR 25–32. On this subject, the ALJ made only a general finding without mentioning even a scintilla of evidence relating to Plaintiff's constipation.[5] This

---

[5] The relevant portions of the ALJ's decision read,

> I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . .
>
> . . . .
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not consistent with the evidence . . . .

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 14

was harmful error requiring remand for the ALJ to weigh the evidence in the first instance. *See Brown-Hunter*, 806 F.3d at 494–95.

In sum, the ALJ erred by failing to give specific, clear and convincing reasons for rejecting Plaintiff's complaints about the severity of her constipation.

**C.  The ALJ must reevaluate whether jobs exist in significant numbers in the national economy that Plaintiff can perform despite her limitations.**

At step five, the Commissioner has the burden to "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his or her] identified limitations." *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015) (first alteration in original) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995)). "Hypothetical questions posed to a [vocational expert] must 'set out *all* the limitations and restrictions of the particular claimant . . . .'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (omission in original) (quoting *Russell v. Sullivan*, 930 F.2d 1443, 1445 (9th Cir. 1991)). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Id.* (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)).

Because the ALJ committed the errors described above, the hypothetical

---

AR 27–28.

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 15

questions posed to the vocational expert may have been incomplete by excluding some of Plaintiff's limitations. Therefore, on remand, the ALJ must reevaluate, in light of this opinion, whether jobs exist in significant numbers in the national economy that Plaintiff can perform despite her limitations.

**D.  The ALJ's errors were harmful and require correction on remand.**

The Court cannot conclude the ALJ's errors were harmless. Accepting the disputed evidence may produce a more restrictive residual functional capacity, which would likely alter the ALJ's finding that jobs exist in significant numbers in the national economy that Plaintiff can perform despite her limitations. Because the record has not been fully developed, outstanding issues must be resolved before a disability determination can be made, and further administrative proceedings would be useful to remedy the identified defects, the Court remands this case to the ALJ. *See Leon v. Berryhill*, 880 F.3d 1041, 1045–47 (9th Cir. 2017).

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

3. The Court enters **JUDGMENT** in favor of Plaintiff **REVERSING**

and **REMANDING** the matter to the Commissioner of the Social Security Administration for further proceedings consistent with this Order pursuant to sentence four of 42 U.S.C. § 405(g).

4. All pending motions are **DENIED AS MOOT**.

5. All hearings and other deadlines are **STRICKEN**.

6. The Clerk's Office is directed to **CLOSE** this file.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 28th day of September 2018.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT **-** 17